ULYSSES S. G. SHIRLEY, APPELLANT, V. HARLAN COUNTY
ET AL., APPELLEES.

FILED FEBRUARY 1, 1929.   No. 26235.

*O. E. Bozarth,* for appellant.

*O. E. Shelburn, contra.*

*O. S. Spillman, Attorney General, George W. Ayres, Butler & James* and *Perry & Van Pelt, amici curiæ.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

GOOD, J.

This is an action to enjoin the county of Harlan and its officials from entering upon and opening up a highway through the plaintiff's premises. The grounds on which the relief is sought are that the county has not acquired a right of way for the highway. It is charged specifically that, in the proceedings by which the county sought to obtain the right of way, it has not complied with various sections of the road law, as contained in article I, ch. 23 (secs. 2563-2620) Comp. St. 1922, and further that, in the attempted appraisement of damages for the right of way, the county has attempted to proceed under chapter 56, Laws 1927; that it had not complied with the provisions of said chapter, and that it is unconstitutional and void.

Defendants answered, in which they set forth the proceedings by which the county claims that it has acquired or was acquiring the right of way for the highway. The reply denied new matter set up in the answer. A trial of the issues resulted in a finding and decree for defendants. Plaintiff has appealed.

The record discloses that plaintiff is the owner of a 200-acre farm in Harlan county; that the Chicago, Burlington & Quincy Railway runs through the northeast corner of the farm, leaving slightly more than 4 acres on the northerly side of the railway; that this 4-acre tract is occupied by plaintiff for a building site, whereon he has his dwelling, barn, many outbuildings, well, cistern, silos, and a large number of forest trees; that the proposed highway is to run through this 4-acre tract, parallel to and 33 feet distant from the railroad, and, if established, will cause the destruction of about 100 of plaintiff's trees, four of his

silos; greatly interfere with the convenient occupancy of the premises and require him, in conducting his farm operations, to cross this public highway, as well as the railroad, to reach the major portion of his farm, which lies on the southerly side of the proposed highway and the railroad.

It appears from the record that the board of supervisors of Harlan county, on the 10th of May, 1927, adopted a resolution, which recites that the department of public works of the state has suggested and directed the establishment of the highway hereinafter described; that the board has considered the matter and, in its judgment, deems it expedient to locate and establish a public road parallel to and within 500 feet of the right of way of the Chicago, Burlington & Quincy Railway and distant 33 feet therefrom. The resolution gives the termini of the proposed road, and concludes as follows: "Be it therefore further resolved that said public road, as above described, be and the same hereby is established."

On the same day the county board, by motion, instructed the county attorney to institute such proceedings as may be necessary for the appropriation and condemnation of the real estate, necessary for the right of way for the road established by the foregoing resolution. Immediately after the passage of the resolution the county clerk of Harlan county issued a commission to Edward E. Johnson, the county surveyor of said county, to view and report upon the practicability of the line of road sought to be established by the resolution of the county board, and in the commission the resolution was set forth. Johnson, the surveyor, took the oath, viewed the premises and made a report, which contained an estimate of expenses and damages which would be sustained by the plaintiff, and setting forth therein the following: "The above road to my opinion is a necessity, as without it there would be no federal aid on the Golden Rod highway in Harlan county this summer, and the county has not enough money in the general fund to purchase the right of way on any other location

the federal government would approve." This report was also filed on the 10th of May, 1927.

On the 11th day of May, 1927, Harlan county filed in the county court an application for the appraisement of damages, if any, to be sustained by the plaintiff by reason of the location and establishment of said highway, and asking that three disinterested freeholders be summoned, as provided by chapter 56, Laws 1927, to assess said damages and report the same to the county court. No previous attempt had been made by the county board to agree with the plaintiff as to the amount of damages he would sustain on account of the appropriation of his land for public use. Pursuant to the application, the county judge appointed three persons, who were summoned and qualified, and the appraisers gave notice to the plaintiff of the time and place of hearing to assess and determine damages; whereupon plaintiff instituted this action. It further appears that Edward E. Johnson is a member and chairman of the board of supervisors of Harlan county, and is also occupying the office of county surveyor of said county.

Article I, ch. 23 (secs. 2563-2620) Comp. St. 1922, and particularly section 2566 and the following sections, provide the method of establishing highways. Section 2566, after first providing for initiation of such proceedings by the filing of a petition, signed by ten electors within five miles of the road proposed to be established, contains the following: "*Provided,* that whenever in the judgment of the board of commissioners or board of supervisors of any county it shall be deemed expedient to locate a public road parallel to the right of way of any railroad company, and distant therefrom not more than five-hundred feet, said road may be established by said county board or board of supervisors by resolution without the submitting of a petition as herein provided. When such road is established by the board, and the resolution establishing the same is filed with the county clerk, he shall proceed in all respects as if said road had been established by petition."

Section 2567, Comp. St. 1922, requires, where the road is sought to be established by petition, that the petitioners shall deposit a certain sum of money to pay the expenses in the event the road is not finally established. Section 2568 is as follows: "Upon compliance with the foregoing provisions, and whenever a legal petition or *resolution* of the county board, as herein provided, is filed with the county clerk, he shall notify the county surveyor to view and to report upon the expediency of the proposed road, alteration or vacation." (Italics supplied.)

Prior to 1917, section 2568, as it then existed, provided that the county clerk should appoint a disinterested and qualified elector in the county as a commissioner to view and report on the expediency of the proposed road. Section 2569 *et seq.* relate to the powers and duties of the commissioner. These sections were not amended to substitute the words "county surveyor" for commissioner, but, since there is no other commissioner than the surveyor, it seems clear that the word "commissioner," as used in section 2569 *et seq.*, should be construed to mean the county surveyor. The county surveyor *ex officio* becomes the commissioner to view, examine and report upon the expediency of the establishment of the highway.

One of the objections raised by the plaintiff is that Johnson was incompetent to act as county surveyor and *ex officio* commissioner to view and pass upon the expediency of establishing the highway, for the reason that he was a member of the county board and, in the adoption of the resolution, had already passed upon the expediency of establishing the highway. The record does not advise us as to whether Mr. Johnson first became a member of the board of supervisors and afterwards surveyor, or whether he first became county surveyor and afterwards a member of the board of supervisors. His right to hold the two offices, of course, is not involved in this action.

This court held in *State v. Wait*, 92 Neb. 313, that one cannot hold two offices, the duties of which are incompatible, and specifically held: "It is a well-settled rule at

common law that if a person, while occupying one office, accepts another incompatible with the first, he, *ipso facto,* vacates the first office, and his title thereto is thereby terminated without any other act or proceeding." This court has frequently held that a member of a city council or board of village trustees is disqualified from voting upon a proposition to grant a saloon license to an applicant where the member of the council or board of trustees had signed the applicant's petition for a license, and, further, that the subsequent erasure and withdrawal of his name from the petition would not qualify him to act as a member of the board granting the license. *State v. Kaso,* 25 Neb. 607; *Foster v. Frost,* 25 Neb. 731; *Powell v. Egan,* 42 Neb. 482; *Rosenberg v. Rohrer,* 83 Neb. 469. The reason for this holding is that in voting to grant the license he acts in a judicial capacity, and, having prejudged the question by signing the applicant's petition, he has thereby disqualified himself from ever acting as a member of the board in granting a license to the particular applicant. *Rosenberg v. Rohrer, supra.*

Section 2570, Comp. St. 1922, requires the surveyor and *ex officio* commissioner, in forming his judgment, to take into consideration both public and private convenience and the expense of the proposed road. Section 2571 provides that, if he shall not be in favor of establishing the proposed road, he shall so report, and no further proceedings shall be had. Section 2572 authorizes him, if the road is for the public good and he can determine the precise location of the same and deems it expedient, to proceed to lay out the road and report accordingly.

It seems clear that the statute contemplates that the county surveyor *(ex officio* commissioner) shall form an independent judgment in determining the expediency of finally establishing the road. In fact, as appears, he is, under certain conditions, the final arbiter in determining whether the road shall be established. He is, therefore, required to exercise a judicial function.

We think the principles laid down in cases above cited are applicable to the present situation. As a member of the board of supervisors, Johnson voted for the resolution, seeking to establish the highway. He thereby committed himself and passed judgment upon the expediency of establishing the highway. Under the law, the matter was then referred to the county surveyor to view and make a report as to the amount of damages that would be sustained by plaintiff, and whether it was expedient to establish the road in a particular location, or to vary somewhat from it. In this matter, the county surveyor, as *ex officio* commissioner, was required to exercise a judicial discretion in performing his duty. As a member of the board of supervisors he had prejudged the question and was therefore incompetent to act as surveyor or commissioner to view the premises and decide upon the expediency of establishing the highway. The chairman of the county board was not competent to act in this capacity. There was, therefore, no valid examination or report. The situation is the same as if no examination or report had been made.

In *Warren v. Brown*, 31 Neb. 8, it is held: "A county board has no jurisdiction to establish a public road, when no commissioner has been appointed to examine into and report upon its expediency, unless the written consent of all the landowners whose land is sought to be taken for that purpose is filed with the county clerk."

Another objection to the validity of the proceedings raised by the plaintiff is that the county court was without jurisdiction to appoint any appraisers to assess the damages that plaintiff would sustain by the appropriation of his land, because no previous attempt had been made by the county or its officials to agree with plaintiff as to the amount of damages which he would sustain by reason of the appropriation of his land.

The defendant county, in attempting to have assessed the damages which plaintiff would sustain, proceeded under chapter 56, Laws 1927. Section 3 of that act provides: "If the owner of any real estate shall refuse to agree with

the county board as to the amount of the damages sustained by him on account of the appropriation of his land for public use by the county, the county judge of the county in which such real estate may be situated, shall, upon the written application of either party, direct the sheriff of said county to summon three disinterested freeholders of the county, and not interested in a like question, whose duty it shall be to carefully inspect and view the real estate sought to be appropriated." As above noted, no attempt was made to reach an agreement with the plaintiff as to the damages he would sustain by reason of the appropriation of his land. This was a condition precedent to making an application to the county court for the appointment of appraisers.

Where a statute requires that before the institution of condemnation proceedings to take private lands for public use, an attempt to agree with the owner shall first be made, such provision is mandatory, and the condemnation proceedings are void in case no attempt is made, before beginning them, to come to an agreement with the owner. 20 C. J. 892, sec. 317. In 20 C. J. 895, sec. 318, it is said: "In order to satisfy statutory requirement, there must be a *bona fide* attempt to agree. There must be an offer made honestly and in good faith, and a reasonable effort to induce the owner to accept it." See, also, *Rogers v. Cosgrave*, 98 Neb. 608; *Trotier v. St. Louis, B. & S. R. Co.*, 180 Ill. 471.

This court was not favored by a brief or oral argument on behalf of the defendants. The plaintiff challenges the constitutionality of chapter 56, Laws 1927. The attorney general, as a friend of the court, has filed a brief in which he contends that the statute is constitutional. Other counsel have filed briefs as friends of the court in which they also attack the constitutionality of said chapter 56. The conclusion we have reached on the assignments of error herein discussed renders it unnecessary to consider or pass upon the constitutionality of chapter 56, Laws 1927.

Because of the fact that the county surveyor was disqualified to act as a commissioner, all proceedings thereafter are utterly void. The county has not perfected the right to appropriate the land, and, even had it perfected such right to proceed with condemnation proceedings, it could not inaugurate such proceedings until a good-faith effort had been made to reach an agreement with the plaintiff as to his damages. This was not done.

It follows that the judgment of the district court should be and is reversed, and the cause remanded, with directions to grant the injunction as prayed.

REVERSED.