IN RE APPLICATION OF LOUP RIVER PUBLIC POWER DISTRICT. JESSE B. HIGGINS, APPELLANT, v. LOUP RIVER PUBLIC POWER DISTRICT, A PUBLIC CORPORATION, APPELLEE.

61 N. W. 2d 213

Filed November 27, 1953. No. 33353.

*Carstens & Pickett* and *Perry & Perry,* for appellant.

*Walter, Albert & Leininger* and *Leslie H. Noble,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action in eminent domain brought by the Loup River Public Power District, a Nebraska public power corporation, appellee, the purpose of which is to acquire a right-of-way for the construction and maintenance of an electric transmission line in Gage County across the lands of Jesse B. Higgins, appellant, and referred to as appellant herein.

The farm in question consists of 232 and a fraction acres. It is composed of three adjoining 80-acre tracts each extending one-half mile in length east and west, and is operated as a unit. The fraction acres is rectangular in shape, consisting of 7.28 acres taken out of the middle 80 acres. The appellant's residence and farm buildings are on the south 80 acres. The farm is located at the west end of Court Street, the main street running east and west in Beatrice. The city limits are at the east edge of the farm. The buildings are located south of the west end of Court Street, are three city blocks north of the south line of the farm, and occupy from 7 to 8 acres. The main channel of a creek runs through the three 80 acre tracts from northeast to southwest. There is one bridge across this creek.

The appellee actually entered upon the premises August 2, 1951, to construct the line. It is described as a two-pole, three-conductor, 115,000 volt line. This transmission line enters the appellant's land from the northeast, crossing the center of the public road east of the

farm at a point about 250 feet south of the southeast corner of his north 80 acres, continues in a southwesterly direction, and leaves his land about 150 feet east of the southwest corner thereof. There is a three-wire transmission line all the way across this described land. There are a total of 13 poles, all of which appear to be in the south two 80-acre tracts. The first structure from the northeast is a three-pole structure. The line continues southwest to the next structure consisting of two poles a distance of 711 feet, just north of the fraction acres mentioned. The next structure to the southwest consists of two poles at a distance of 550 feet from the second structure. Other structures continuing along the line as heretofore designated are described. The poles in each structure are set about 14 feet 6 inches apart, center to center, and are about 55 feet high. A cross arm carries three strings of bell insulators, each string containing seven bells, from which strings the conductors are suspended. The minimum height of the conductors at the point of suspension is 38 feet, and at the center of the span 25 feet at 120 degrees Fahrenheit. The total distance of the transmission line is 3,995 feet, with a right-of-way 100 feet in width. Where the transmission line enters the farm it immediately crosses an alfalfa field, and continues through the alfalfa field to a brome field. For 100 feet along the transmission line the appellee has cleared off the trees. This transmission line comes within 35 rods of the appellant's home and his farm buildings.

The above is substantially the description of the farm and the transmission line.

The action was instituted in the county court of Gage County, Nebraska, in which court an award for damages was made by appraisers, from which award an appeal was taken to the district court by the appellant herein. In the district court trial was had to a jury, resulting in a verdict and judgment in favor of the appellant for $5,000. The appellee filed a motion for new trial which was sustained. From the sustaining of this motion for

new trial, the appellant has appealed to this court.

While there are several assignments of error advanced by the appellant, the principal assignment of error and the one which determines this appeal is the contention of the appellant that the statutory prerequisite to condemnation proceeding has not been complied with by the appellee, and upon failure of the appellee to so comply, the condemnation proceeding must be dismissed.

There appears in the application of the appellee filed in the county court of Gage County, in paragraph 4, the following: "Your applicant has heretofore attempted to agree with the owners of said lands and the parties hereto as to the amount due them for acquiring an easement for said transmission line over and across said lands, but has been unable to reach an agreement." No other pleadings were filed in the county court.

On appeal to the district court the appellant alleged in paragraph 3 of his petition that the appellee failed to follow the lawful procedure of eminent domain in that appellee specifically failed to attempt to agree with the appellant as to the amount due for acquiring an easement for such transmission line as provided for by law before instituting this condemnation proceeding.

In the amended petition the appellant stated in paragraph 2 that the appellee began the condemnation proceeding by filing its application in the county court of Gage County without first contacting Jesse B. Higgins, appellant, and attempting to negotiate with him as to the purchase price for its right-of-way; that the appellee was required by law to contact and attempt to negotiate with the appellant before filing a condemnation action against him; and that the statutes of this state require, as a condition precedent to any condemnation action, that the condemner must first contact the owner of the property and attempt to arrive at an agreement as to the damages condemnee would suffer by the taking of a right-of-way across his land.

In the second amended petition, the appellant alleged

that he had been ordered by the district court of Gage County, Nebraska, not to again set up the claimed defense set forth in paragraphs 2 and 3 of his amended petition theretofore filed; and that except for the ruling of the district court of Gage County, Nebraska, directing him not to again set forth this claimed allegation, appellant would again allege the same subject matter as set forth in paragraphs 2 and 3 of his amended petition theretofore filed.

The transcript discloses an affidavit made by an employee of the appellee in charge of the procurement of right-of-way. This affidavit is to the effect that he visited appellant's premises for the purpose of negotiating with him as the owner of the lands over which the right-of-way was to be obtained, to ascertain the damages that would be suffered by him. He was unable to contact appellant, but did contact his wife who informed affiant that the appellant was working and it would avail affiant nothing to contact him. There was also reference to other matter collateral to the purpose of the visit made by this affiant. The affiant stated that it was apparent to him that further contact with the appellant or his wife would only cause unpleasantness and animosity toward the affiant and the appellee.

The record made at the trial on this point is in substance as follows: By stipulation of the parties in the absence of the jury and before opening statements were made to the jury it was agreed that in the event appellant was on the witness stand and the questions necessarily involved in presenting the subject matter of the offer to prove had been propounded the same would have full force and effect. The offer to prove was that no offer was made to the appellant for the rights which appellee was attempting to acquire at any time prior to the filing of the appellee's proceeding in the county court of Gage County to condemn the lands of the appellant. The appellee objected to the offer as being incompetent, irrelevant, and immaterial and not tending to prove or

disprove any of the issues in the case; further, that the orders of the trial court entered therein pertaining to the pleadings on file and on the basis of which the trial was to be conducted had eliminated such issue from the case; further, that the attempt to inject such issue in the case was contrary to the record; and that the appellant was represented by counsel and appeared at the original condemnation proceeding held in the county court from which he appealed directly, and was estopped from raising the issue. This objection was sustained.

The condemnation proceeding was commenced in the county court of Gage County on February 27, 1951. The report of the appraisers was filed March 20, 1951. The damages awarded the plaintiff in the amount of $515 was paid into the county court March 22, 1951.

The procedure in the county court contemplates an informal hearing by the appraisers, a view of the lands, no record of the testimony, and a report of damages assessed to be filed subject only to the right of appeal, not to confirmation by the appointing court. It is obvious that the appellant could only raise the proposition here being discussed for the first time in his petition on appeal to the district court.

The appellant sets forth sections 76-704 and 76-702, R. S. Supp., 1951. Section 76-704, R. S. Supp., 1951, reads as follows: "If any condemnee shall fail to agree with the condemner with respect to the acquisition of property sought by the condemner, a petition to condemn the property may be filed by the condemner in the county court of the county where the property or some part thereof is situated."

Section 76-702, R. S. Supp., 1951, reads as follows: "After negotiations have failed, any condemner, or his representative, upon proper identification and after informing the condemnee of the contemplated action is authorized to enter upon any land for the purpose of examining and surveying same in contemplation of bring-

ing or during the pendency of condemnation proceedings under sections 76-701 to 76-724; * * *."

The appellee states it started the condemnation proceeding under section 74-308, R. R. S. 1943, which provides as follows: "Any railroad corporation may purchase and use real estate for a price to be agreed upon with the owners thereof. The damages to be paid by such corporation for any real estate taken as aforesaid, *when not agreed upon,* shall be ascertained and determined by commissioners to be appointed by the county judge of the county wherein such real estate is situated, in conformity with the provisions of section 74-309." (Emphasis supplied.)

It appears by chapter 101, Laws of Nebraska, 1951, relating to eminent domain that section 74-308, R. R. S. 1943, was amended as shown by section 113 on page 501, as follows: "Any railroad corporation may purchase and use real estate for a price to be agreed upon with the owners thereof, and may acquire same through the exercise of the power of eminent domain. The procedure to condemn property shall be exercised in the manner set forth in sections 4 to 24 of this act." Section 4 of the act is now section 76-704, R. S. Supp., 1951, heretofore set out.

Sections 76-702 and 76-704, R. S. Supp., 1951, became effective May 21, 1951, and were not in existence at the time the condemnation proceeding was instituted in the county court of Gage County. This being true, these sections of the statute are not for consideration here. However, the new law which included these sections of the statute did not change the requirement that an attempt to contact the owner of the lands over which the condemner desires to acquire the easement with reference to the subject of damages for so doing be made before condemner proceeds to condemn the lands.

In reviewing section 74-308, R. R. S. 1943, as it appeared before it was amended, the language used therein "when not agreed upon" would indicate that there must

be an attempt on the part of the condemner to contact the condemnee with reference to damages to be paid by it for the right-of-way across the condemnee's lands.

The affidavit heretofore mentioned was not offered in evidence and did not become a part of the record for review in this court. This court has many times held that evidence to be considered on a review of a case must be contained in the bill of exceptions. See, Bryant v. State, 153 Neb. 490, 45 N. W. 2d 169; Darlington v. State, 153 Neb. 274, 44 N. W. 2d 468. There are many other cases to the same effect. We need not discuss the question of the admissibility of this affidavit in evidence.

"The right to exercise the power of eminent domain must be conferred by statute, either in express words or by necessary implication. Such power being in derogation of common right, the acts conferring it are to be strictly construed in favor of the landowner; * * *." 29 C. J. S., Eminent Domain, § 22, p. 806.

The case of Shirley v. Harlan County, 117 Neb. 846, 223 N. W. 284, involves a different statute than section 74-308, R. R. S. 1943. However, language does appear in this opinion which applies to a statute such as 74-308, R. R. S. 1943, which is applicable and is as follows: "Where a statute requires that before the institution of condemnation proceedings to take private lands for public use, an attempt to agree with the owner shall first be made, such provision is mandatory, and the condemnation proceedings are void in case no attempt is made, before beginning them, to come to an agreement with the owner." 20 C. J., Eminent Domain, § 317, p. 892, is cited. 20 C. J., Eminent Domain, § 318, p. 895, is also cited as follows: "In order to satisfy statutory requirement, there must be a bona fide attempt to agree. There must be an offer made honestly and in good faith, and a reasonable effort to induce the owner to accept it."

In the case of Rogers v. Cosgrave, 98 Neb. 608, 153 N. W. 569, the Chicago, Burlington & Quincy Railroad Company made application to the county court of Lancaster

County to condemn certain lands owned by George H. Rogers, Isabella Rogers, and Anna Rogers. The statute involved was section 5945, Rev. St. 1913, which provided in part that the damages to be paid by such corporations "*when not agreed upon*" should be ascertained by condemnation. It will be noted that the language "when not agreed upon" also appears in section 74-308, R. R. S. 1943. In the cited case negotiations were attempted but failed. It appears that there must be an attempt to contact and negotiate with a condemnee with reference to the damages that would be suffered by obtaining right-of-way over lands. It might be mentioned that section 74-308, R. R. S. 1943, is substantially the same as section 5945, Rev. St. 1913.

The attempt and failure to agree must be alleged and proved, and this must appear on the face of the record. See 29 C. J. S., Eminent Domain, § 224, p. 1166. See, also, 29 C. J. S., Eminent Domain, § 258, p. 1227.

Statutory provisions of the type here considered are usually regarded as mandatory and jurisdictional, and it has been stated broadly that objection based on the failure of the record to show that the parties cannot agree may be raised at any time by direct attack. See 29 C. J. S., Eminent Domain, § 224, p. 1172.

In the case of In re Petition of Rogers, 243 Mich. 517, 220 N. W. 808, while the action was not the same as in the instant case nor the statute the same as that involved herein, it appears that the statute made a requirement that the owners of the land over which the highway was to go should be contacted with reference to the damages. An offer was made for settlement which could under no circumstances be acceptable as a bona fide offer. The principal part of the opinion as it applies to the instant case is as follows: "The statute of eminent domain is to be strictly construed, and its jurisdictional conditions must be established in fact and may not rest upon technical waiver or estoppel." The court said that the allegation of the petition with reference to purchase

was sufficient, prima facie, to authorize appointment of court commissioners and open issues of fact, inclusive of jurisdictional prerequisites, but did not prove any alleged fact, call for traverse, dispense with evidence, or bring waiver by failure to move to dismiss before appointment of commissioners. The statute must be strictly construed when the exercise of eminent domain is sought.

"An allegation of failure or inability to agree with the owner as to the purchase of the property, the value thereof, or the amount of damages must be proved where such failure or inability is made a condition precedent by statute, * * *." 29 C. J. S., Eminent Domain, § 266, p. 1238. To like effect see, State ex rel. Bremerton Bridge Co. v. Superior Court, 194 Wash. 7, 76 P. 2d 990; 2 Lewis, Eminent Domain (3d ed.), § 497, p. 893; City of Portland v. Kamm, 132 Or. 317, 285 P. 236; Glass v. Basin Mining & Concentrating Co., 22 Mont. 151, 55 P. 1047; 2 Nichols, Eminent Domain (2d ed.), § 377, p. 1026; City of St. Louis v. Glasgow, 254 Mo. 262, 162 S. W. 596; City of Winston-Salem v. Ashby, 194 N. C. 388, 139 S. E. 764; City of Milwaukee v. Diller, 194 Wis. 376, 216 N. W. 837; Lake Shore & M. S. Ry. Co. v. Cincinnati, W. & M. Ry. Co., 116 Ind. 578, 19 N. E. 440.

On appeal to the district court from the appraisement of damages, if other issues than the question of damages are involved, they must be presented by proper pleadings. See Burnett v. Central Nebraska Public Power & Irr. Dist., 147 Neb. 458, 23 N. W. 2d 661.

The trial court in granting a new trial did not do so on the assignment of error determined in this appeal. However, it is obvious that a new trial must be had, and the judgment of the trial court in granting a new trial is hereby affirmed.

The trial court erred, as pointed out in the opinion, and its judgment in this respect is reversed and the cause remanded with directions to permit the appellant to raise the issue as contended for in his second amended

662

petition and as set forth in this opinion, the appellee to pay all costs.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.